C. Robert JULIANO, Plaintiff,

v.

Alexander KANE, Alan S. Kane, Zelenkofsky, Axelrod & Co., Ltd., Paul Zelenkofsky, Kanes Supermarket, Inc., Kanes, Inc., and Rosegood, Inc., Defendants.

Civ. A. No. 88–1518(JCL).

United States District Court,
D. New Jersey.

Dec. 20, 1988.

---

Michael A. Querques, Orange, N.J., for plaintiff.

W.S. Gerald Skey, Hannoch Weisman, Princeton, N.J., and Julius F. Harms, Levittown, Pa., for defendants Rosegood, Inc. and Alan J. Kane.

Jeffrey Lester, Braverman & Lester, Hackensack, N.J., and Charles W. Stotter, Parker, Chapin, Flattau & Klimpl, New York City, for defendants Zelenkofsky, Axelrod & Co., Ltd. and Paul Zelenkofsky.

## OPINION AND ORDER

LIFLAND, District Judge.

Defendants move to dismiss plaintiff's complaint for improper venue, or, in the alternative, to transfer the case to the Eastern District of Pennsylvania, or in the alternative, to dismiss the complaint for failure to state a claim and plead with particularity. The complaint asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331; the Racketeer Influenced and Corrupt Organizations Act (RICO), particularly 18 U.S.C. §§ 1964(a) and (c); and the regulation of interstate commerce pursuant to the Commerce Clause and 28 U.S.C. § 1337. The complaint also asserts diversity jurisdiction pursuant to 28 U.S.C. § 1332, and sets forth pendent claims under New Jersey statutes similar in nature to RICO, for civil conspiracy, and for common law fraud. Plaintiff seeks compensatory and punitive damages, attorneys' fees and costs, and a constructive trust. The court decides this motion on the papers pursuant to F.R.Civ.P. 78.

The court need not address the merits of defendant's motion to dismiss the complaint for failure to state a claim or plead with particularity, because this case must be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1406(a), which states:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

Paragraph 3 of the complaint states:

Personal jurisdiction and venue for this action are predicated on 18 U.S.C. § 1965 and on 28 U.S.C. § 1391(b), since the defendants are residents of, are found within, have agents within, or transact their affairs in the Eastern District of Pennsylvania, and the activities of the defendants giving rise to this claim took place in the Eastern District of Pennsylvania.

18 U.S.C. § 1965(a) states:

Any civil action or proceeding under [RICO] against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

Plaintiff "concede[s] that a strict reading of 18 U.S.C. § 1965(a) and an examination of the facts of the instant case would demonstrate that the plaintiff could not base v[e]nue of his claim solely on the RICO venue statute." Plaintiff's Memorandum of Law #2 at 1. However, 28 U.S.C. § 1391(b) states:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

The venue provisions of § 1391(b) supplement the venue provisions of RICO. *Chambers Dev. Co. v. Browning–Ferris Indus.,* 590 F.Supp. 1528, 1546 (W.D.Pa. 1984); *Eaby v. Richmond,* 561 F.Supp. 131, 139 (E.D.Pa.1983). Plaintiff argues that

defendant Zelenkofsky, Axelrod & Co., Ltd., an accounting firm, sent several written certifications to plaintiff at the direction of defendant Alexander Kane, Alan S. Kane, and Kanes Supermarket [hereinafter the "Kane defendants"] in order to fraudulently induce plaintiff into accepting lower payments than those due him under a lease between plaintiff and the Kane defendants. In a footnote plaintiff claims he is in possession of thirteen such certifications and knows of the existence of at least two more. Plaintiff's Memorandum of Law #2 at 1–2. Plaintiff cites *Eaby,* also a RICO case where § 1391(b) was applicable:

> [D]efendants wrote to plaintiffs a number of times regarding well development and production. *See,* Complaint ¶¶ 20 and 23. Such intradistrict conduct satisfies the venue statute. *Cf. Kogok v. Fields,* 448 F.Supp. 197, 198–99 (E.D.Pa. 1978) (Venue properly laid under 15 U.S.C. [§] 78aa's standard where defendants mailed proxy statements to plaintiffs).
>
> We, therefore, conclude that the mailing letters to this district by defendants Nau and Dawson, amounts to sufficient activity within the district to support venue. 28 U.S.C. § 1391(b); *Farmers Bank v. Bell Mortgage Co.,* 452 F.Supp. [1278,] 1281 [ (D.Del.1978) ].

*Eaby,* 561 F.Supp. at 140–41. *Eaby* cited and followed *Farmers Bank,* 452 F.Supp. at 1281, which held:

> In determining in which district a claim arose, this Court has adopted the "weight of the contacts" test in ascertaining the propriety of venue under the antitrust laws.... I believe that the "weight of the contacts" test should also be applied in this action arising under [RICO].
>
> ... [B]efore the Court must determine the "weight of the contacts," it must be alleged that each participant in the conspiracy, as to whom the impropriety of venue in a particular district is asserted, has engaged in some significant or substantial act pursuant to the conspiracy in that district.... Since the venue provisions at issue here are modeled after the antitrust venue provisions, I conclude

that it must be shown that there is venue ... under Section 1391(b), due to [defendant's] contacts with this district.

After examining *Leroy v. Great Western United Corp.,* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), decided after *Farmers Bank* this court respectfully disagrees with that part of *Eaby* that holds that venue in RICO cases where § 1391(b) applies is satisfied in plaintiff's district merely by plaintiff's receipt of letters from a defendant.

The plaintiff in *Leroy* was a Texas corporation attempting a tender offer for the stock of the defendant company with substantial assets in Idaho. The plaintiff filed suit in the Northern District of Texas to restrain Idaho officials from applying Idaho take-over statutes to prevent the tender offer. Section 1391(b) applied to the case. The district court found that venue was improperly laid in the Northern District of Texas, but held that special venue provisions of Section 27 of the Securities Exchange Act of 1934 allowed the case to remain in that district. The Fifth Circuit held that venue was proper under both § 1391(b) and § 27. The Supreme Court reversed, holding that venue was improper under both statutes. The Court noted that the first test of venue, the residence of the defendants, "obviously" pointed to Idaho rather than Texas. *Leroy,* 443 U.S. at 183, 99 S.Ct. at 2716. The Court continued:

> In most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial. For that reason, Congress has generally not made the residence of the plaintiff a basis for venue in nondiversity cases. *But cf.* 28 U.S.C. § 1391(e)....
>
> Moreover, the plain language of § 1391(b) will not bear the Court of Appeals' interpretation. The statute allows venue in "the judicial district ... in which the claim arose." Without deciding whether this language adopts the occasionally fictive assumption that a claim may arise in only one district, it is absolutely clear that Congress did not

intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts. [citation omitted] Rather, it restricted venue either to the residence of the defendants or to "a place which may be more convenient to the litigants"—*i.e.*, both of them—"or to the witnesses who are to testify in the case." S.Rep. No. 1752, 89th Cong., 2d Sess., 3 (1966). [other citations omitted] In our view, therefore, the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of the witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim (citation omitted).

This case is not, however, unusual. For the claim involved has only one obvious locus—the District of Idaho.

*Id.* at 183–85, 99 S.Ct. at 2716–17 (footnotes omitted; emphasis in original).

*Leroy* did not address what the appropriate standard would be for deciding where a "claim arose." Under the facts of this case, the court cannot hold that the District of New Jersey was a locus of plaintiff's claims. As in *Leroy,* there is one obvious locus—the Eastern District of Pennsylvania. . This is indicated by plaintiff himself in paragraph 3 of his complaint ("the activities of the defendants giving rise to this claim took place in the Eastern District of Pennsylvania").

*Eaby* relied on *Lieb v. American Pacific Internat'l, Inc.,* 489 F.Supp. 690 (E.D.Pa. 1980), for the proposition that the proper analysis was a "weight of the contacts" analysis. *Eaby,* 561 F.Supp. at 139. In *Lieb,* the court concluded that under *Leroy* the interpretation of the meaning of "claim arose" under § 1391 was a question of federal law, even in diversity cases. *Lieb,* 489 F.Supp. at 695 (citing *Leroy,* 443 U.S.

at 183 n. 15, 99 S.Ct. at 2716 n. 15). *Lieb* then adopted the weight of the contacts test as "the most widely accepted test," *Lieb,* 489 F.Supp. at 695, and determined that under this test and the facts of that case venue lay in the Eastern District of Pennsylvania rather than the Central District of California. *Id.* at 696.

*Eaby* should not have relied on *Lieb,* however. In *Lieb* jurisdiction was premised solely on diversity of citizenship of the parties, and venue in such cases is controlled by § 1391(a), not § 1391(b). Under § 1391(a), a civil action premised solely on diversity jurisdiction may be brought in the district where all plaintiffs reside. This is a critical distinction: Congress intended that § 1391(b) not allow venue to lie where plaintiffs reside. *Leroy,* 443 U.S. at 185, 99 S.Ct. at 2717.

*Kogok,* also cited in *Eaby,* is distinguishable as well. The venue statute in *Kogok* was 15 U.S.C. § 78aa, which provides that venue is proper in a civil securities suit where (1) any act or transaction constituting the violation occurred; (2) a defendant is found; (3) a defendant is an inhabitant; or (4) a defendant transacts business. *Kogok,* 448 F.Supp. at 198 (citations omitted). By its very wording § 78aa is far broader than § 1391(b). In addition, *Leroy* was decided after *Kogok,* and this court is bound by the Supreme Court's reasoning in *Leroy.* The court concludes that *Leroy* is inconsistent with *Eaby* 's conclusion that a claim arose in plaintiff's district merely because plaintiff received letters from defendants, especially when as in this case plaintiff alleges that "the activities of the defendants giving rise to this claim took place in the Eastern District of Pennsylvania." Complaint, ¶ 3.

Plaintiff's citation of *Hagner v. United States,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932), which held, *inter alia,* that venue in criminal mail fraud cases could be where the mail was sent or delivered, Plaintiff's Memorandum of Law # 2 at 2, is inapposite to this civil case.

Accordingly, the court concludes that this action should not be dismissed, but should rather be transferred to the Eastern

District of Pennsylvania, where it could have been brought.

For these reasons, IT IS on this 20th day of December, 1988, ORDERED that this action is transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1406(a).